[Civ. No. 8886. Fourth Dist., Div. One. Sept. 24, 1968.]

JOHN KNOWLES, Plaintiff and Respondent, v. JOSEPH C. O'CONNOR, Defendant and Appellant.

Bertram McLees, Jr., County Counsel, Duane J. Carnes and Parker O. Leach, Deputy County Counsel, for Defendant and Appellant.

Anthony W. Bright for Plaintiff and Respondent.

BROWN (Gerald), P. J.—Joseph C. O'Connor, San Diego County Sheriff, appeals from a judgment after court trial directing him to return three coin-operated baseball type amusement devices to their owner, plaintiff John Knowles. The machines had been confiscated as violating San Diego County Ordinance section 37.201, or, alternatively, as violating California gaming laws (Pen. Code, § 330 et seq.).

Knowles sought to recover the machines in this action under Penal Code, section 335a, which gives the superior court jurisdiction over such a matter.

At trial it was stipulated the one machine received in evidence was representative of the impounded three. Testimony by a repairman demonstrated the workings of the machine and how it was operated. No testimony was offered by the sheriff.

The court found the machines to be coin-operated amusement-type devices consisting of a rectangular glass enclosed box on legs, slightly elevated at the back. By pressing a button with a left hand finger the player causes a steel ball to be ejected from the center of the playing surface so it rolls down to a bat which is activated by pressing another button with a finger of the right hand. When struck the ball is propelled to the elevated rear of the box where it will either strike a card registering a ''single,'' ''double,'' ''triple,'' or ''home run,'' or, if the cards are missed, an ''out.'' Runs are scored by a combination of hits advancing a ''base runner'' to home plate. Sufficient runs scored entitle the player to free games. Three outs end the game.

There are no bumpers or pins on the machines' playing surface. The ball is pitched at a constant pre-set speed to a bat which, when activated, moves at a constant speed. The number of runs needed to win free games and the speed of the bat could be varied but requires an internal adjustment.

The court found the machines to be games of skill where the score to be achieved varies only with the skill and dexterity of the player. The skill is in pressing the button to swing the bat at the right time to strike the ball. In other words the skill depends on the reflexes and timing of the player. The player receives nothing of value from the machines other than free games which are for amusement purposes only. The sheriff concedes there is no evidence the machines were used for gambling.

Whether a particular game is one of skill or chance is largely a factual issue (*William* v. *Justice Court,* 230 Cal.App.2d 87, 97 [40 Cal.Rptr. 724]).

Here the trial court's finding the machines are games of skill is supported by substantial evidence consisting of the representative machine and testimony of its workings and operation. Games of skill do not fall within the prohibition of the state gaming laws (Pen. Code, §§ 330b, subd. (4), 330.5).

The sheriff contends, however, that coin-operated games of skill which offer a chance of free games are prohibited by San Diego County Ordinance, section 37.201. Inso-

far as pertinent here, that section defines prohibited machines as those which, after insertion of a coin, may be operated, "and by reason of any element of chance *or of other outcome of such operation unpredictable by him,*" the user may win additional games. The question is whether that portion of the definition which we emphasize can fairly be construed as referring to games of skill.

The term "games of skill" has a reasonably ascertainable meaning (*In re Allen,* 59 Cal.2d 5, 6 [27 Cal.Rptr. 168, 377 P.2d 280, 97 A.L.R.2d 1415]). The term has been employed by the state Legislature in drafting amusement device legislation. Significantly, Penal Code, section 330b defines a prohibited device as one which after inserting a coin may be operated, "and by reason of any element of hazard or chance or of other outcome of such operation unpredictable by him," the user may become entitled to something of value or free games. While this is almost identical language to that appearing in the county ordinance, Penal Code, section 330b goes on to provide by using this language it is not intended to prohibit devices "which are predominantly games of skill." (Pen. Code, § 330b, subd. (4).) This expression of legislative intent is explanatory rather than exculpatory. It would be chaotic to attribute different meanings to words depending upon which legislative body uses them.

The only explanation of legislative intent concerning prohibited devices contained in the county ordinances appears in section 37.202. It is there stated the prohibited devices referred to in section 37.201 are "usually, but not exclusively" described as pinball machines with a playing surface studded with pins, plugs, buffers, springs and holes through which a ball wends its way from top to bottom. The trial court correctly found this was not the type of device here involved.

 Had the county supervisors intended to prohibit coin-operated games of skill which offer free chances for additional games, they could have employed plain language to accomplish that end. We hold the language appearing in San Diego County Ordinance, section 37.201 to be unenforceably vague when applied to a game of skill (*People* v. *Martin,* 237 Cal. App.2d 770, 772 [470 Cal.Rptr. 337]).

 Because we find support for the trial court's determination the devices are not prohibited by either state or county laws, we do not rule upon the alternative finding and conclusion by the trial court that state legislation has preempted the field of gaming device regulation. We note the recent case of *People* v. *Mason,* 261 Cal.App.2d 348 [68

Cal.Rptr. 17], holding municipal regulation of pin ball machines to be permissible.

The sheriff contends there is no evidentiary support for finding the machines outside the operation of the county ordinances because there was a stipulation the machines were within the purview of the ordinances. The stipulation appears in the pretrial order, was reaffirmed at the trial and was found to have been made in the court's findings. The court went on to find the machines were not within the purview of the ordinances, thus effectively relieving the owner from his ill-advised stipulation. The stipulation appears to have been made under a mistaken conception of the law that the county ordinances applied equally to games of skill as to games of chance. The sheriff could not have been prejudiced by relying on the stipulation, as the issue of skill versus chance remained in the case relevant to determining the applicability of the state gaming laws. Under these circumstances the stipulation involved a question of law and was not binding on the court (*Brunt* v. *Occidental Life Ins. Co.*, 223 Cal.App.2d 179, 183 [35 Cal.Rptr. 492]; *Duncan* v. *Garrett*, 176 Cal.App.2d 291, 294 [1 Cal.Rptr. 459]). The trial court did not abuse its discretion by relieving the owner from his stipulation.

The sheriff contends the superior court lacked jurisdiction to determine this case because the value of the machines was $900. By his answer, the sheriff acknowledged the jurisdiction of the superior court under Penal Code, section 335a, alleging the machines violated Penal Code, sections 330 et seq. Wholly without merit is the sheriff's contention the superior court should have transferred the cause to the municipal court when it had determined the machines did not violate the state gaming laws. This determination was not made until judgment was entered in a case where jurisdiction of the subject matter had been established by the pleadings. The procedure suggested by the sheriff would likely lead to an untenable application of *renvoi* between the superior and municipal courts.

The judgment is affirmed.

Coughlin, J., and Whelan, J., concurred.